AARON D. FORD
Attorney General of the State of Nevada
ERNEST D. FIGUEROA
Consumer Advocate and Chief Deputy Attorney General
LUCAS J. TUCKER, (NV Bar No. 10252)
Senior Deputy Attorney General
MICHELLE C. NEWMAN, (NV Bar No. 13206)
Deputy Attorney General
8945 W. Russell Road, Suite 204
Las Vegas, Nevada 89148
Telephone: (702) 486-3420
Email: LTucker@ag.nv.gov
Email: MNewman@ag.nv.gov
Attorneys for State of Nevada

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA BY ITS ATTORNEY GENERAL AARON D. FORD<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, a corporation; COLLABORATIVE CARE HOLDINGS, LLC, a limited liability company; DAVITA INC., a corporation; and DAVITA MEDICAL HOLDINGS, LLC, a limited liability company.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff State of Nevada, through its Attorney General, as *parens patriae* on behalf of and to protect the health and welfare of persons residing in Nevada, having reason to believe that Defendant Collaborative Care Holdings, LLC, a limited liability company controlled by Defendant UnitedHealth Group Incorporated ("UnitedHealth Group"), and Defendant DaVita Inc. ("DaVita") have

reached an agreement (the "Proposed Acquisition") pursuant to which UnitedHealth Group will acquire all of the issued and outstanding equity interests of Defendant DaVita Medical Holdings, LLC, the holding company for DaVita Medical Group ("DMG"), which, if consummated, would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended, hereby issues its complaint as follows:

## I.   PARTIES

1. Defendant UnitedHealth Group Incorporated is a for-profit corporation headquartered at 9900 Bren Road East, Minnetonka, MN 55343. UnitedHealth Group operates two wholly-owned subsidiaries: UnitedHealthcare and Optum, Inc. ("Optum").

2. UnitedHealth Group's insurance business (operated by UnitedHealthcare, or "United") offers commercial and Medicare Advantage ("MA") health insurance plans to employer groups and individual consumers, including Medicare-eligible seniors (individuals age 65 and over), in the State of Nevada and other states in competition with other MA insurers, known as "Medicare Advantage Organizations" ("MAOs"). United is the largest MAO in the combined Clark and Nye counties in Nevada (the "Las Vegas Area").

3. Defendant Collaborative Care Holdings, LLC is a limited liability company organized, existing, and doing business under and by virtue of the laws of the State of Delaware with its executive offices and principal place of business located at 9900 Bren Road East, Minnetonka, Minnesota 55343.

4. Optum's OptumCare unit offers managed care provider organization ("MCPO") services to health insurers, including MAOs, and operates employed medical groups, independent physicians associations or affiliated networks, ambulatory surgery centers, and urgent care centers. In the Las Vegas Area, OptumCare's network consists of primary care physicians and specialists employed by or associated with Southwest Medical Associates, OptumCare Medical Group,

and OptumCare Specialty Care.

5. Defendant DaVita Inc. is a for-profit corporation headquartered at 2000 16th Street, Denver, CO 80202. DaVita's DMG division operates MCPOs in six states, including Nevada. In the Las Vegas Area, DMG operates the HealthCare Partners of Nevada ("HCPNV") network, which consists of HCP Medical Group, an employed physician group, and DMG's affiliated providers.

6. Defendant DaVita Medical Holdings, LLC, is a limited liability company organized, existing, and doing business under and by virtue of the laws of the State of California with its executive offices and principal place of business located at 717 17th Street, Denver, Colorado 80202.

7. In the Las Vegas Area, Optum and DMG operate the two largest MCPOs, which are medical groups that employ or affiliate with a significant number of primary care physicians and specialists to ensure the coordination of patient care and control the costs of delivering proper care to patients, including MA members. Optum's and DMG's MCPOs—OptumCare and HCPNV, respectively—are the two largest providers of MCPO services sold to MAOs in the Las Vegas Area.

## II. JURISDICTION

8. Defendants and each of their relevant operating subsidiaries and parent entities are, and at all times relevant herein have been, engaged in interstate commerce and in activities that substantially affect interstate commerce.

9. This lawsuit is filed by Plaintiff State of Nevada pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended. This Court has subject matter jurisdiction over the Plaintiff's antitrust claim pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337(a).

10. This Court has personal jurisdiction over Defendants because Defendants transact business within the District of Nevada. Specifically, Defendants own and operate the two largest providers of MCPO services sold to MAOs in the Las Vegas Area, one of which is the subject of the Proposed Acquisition.

11. Venue is proper in this District pursuant to 15 U.S.C. § 22, and 28 U.S.C. § 1391(b).

### III. THE PROPOSED ACQUISITION

12. On December 5, 2017, UnitedHealth Group entered into an equity purchase agreement to acquire DaVita's DMG division for approximately $4.9 billion in cash. The purchase price was amended to $4.3 billion on December 11, 2018. The Proposed Acquisition includes DMG's medical groups and affiliated networks across all six states where DMG operates, including Nevada.

### IV. THE RELEVANT MARKETS

#### A. *MCPO Services Sold to MAOs*

13. MCPO services sold to MAOs constitute a relevant service market in which to analyze the effects of the Proposed Acquisition. MCPO services include physician service lines—both primary care physicians and specialists—that are integrated with other aspects of care coordination and cost containment provided by MCPOs. MCPOs offer to MAOs a broad set of providers that can independently manage an MA network while effectively coordinating care, managing utilization, and containing costs for a covered patient population.

14. The relevant geographic market in which to analyze the effects of the Proposed Acquisition on MCPO services sold to MAOs is no broader than the Las Vegas Area, which includes Clark and Nye counties in Nevada.

#### B. *MA Plans Sold to Individual MA Members*

15. Another relevant product market in which to analyze the effects of the

1 Proposed Acquisition is the market for MA health plans ("MA plans") sold to
2 individual MA members. MA plans are meaningfully differentiated from other
3 types of health insurance products, including Original Medicare, eligibility-
4 restricted Medicare options (e.g., special needs plans or "SNPs"), employer-group
5 MA plans, and commercial health plans. MA plans are differentiated from Original
6 Medicare in several important respects, including MA plans' limited networks, caps
7 on out-of-pocket spending, coordination of care by providers, and members' access to
8 supplemental benefits like prescription drug coverage. SNPs are MA plans
9 specifically designed for qualifying individuals to treat specific medical conditions or
10 needs, and thus are not available to seniors who enroll in a typical MA plan unless
11 they have or develop one of the specified conditions required for SNP eligibility.
12 Likewise, employer-group MA plans are limited to employees of a participating
13 organization; an MA enrollee cannot enroll in an employer-group MA plan unless
14 they are a former employee of a participating employer. The market for MA plans
15 also excludes commercial health plans because MA plans often feature zero or very
16 low premiums, which are much less expensive than commercial health plans, which
17 frequently charge much higher premiums. Medicare-eligible seniors who purchase
18 MA plans therefore are either not likely to select Original Medicare or purchase a
19 commercial health plan, or are restricted from purchasing a SNP or employer-group
20 MA plan, in the event of a price increase on all MA plans.

21     16. Clark County and Nye County are each a relevant geographic market
22 in which to analyze the effects of the Proposed Acquisition on MA plans sold to
23 individual MA members; however, the competitive conditions and market structure
24 for MA plans sold to individual MA members are similar in both counties, so it may
25 be appropriate to cluster Clark and Nye counties together as the Las Vegas Area for
26 analytical convenience.

27     V.     **THE STRUCTURE OF THE RELEVANT MARKETS**

17. United's OptumCare and DaVita's HCPNV are the two largest providers of MCPO services sold to MAOs in the Las Vegas Area. The Proposed Acquisition will cause OptumCare and HCPNV to cover over 80% of MA members in the Las Vegas Area and result in a highly concentrated market.

18. In the market for MA plans sold to individual MA members in the Las Vegas Area, United covers over 50% of MA lives. Humana is responsible for approximately 35% of the MA lives in the Las Vegas Area. The remainder of the Las Vegas Area market for MA plans sold to individual MA members comprises a number of MA insurers with less than 10% of the market.

## VI. EFFECTS OF THE PROPOSED ACQUISITION

### A. *Horizontal Effects in the Las Vegas Area*

19. The Proposed Acquisition would eliminate direct and substantial price and non-price competition between UnitedHealth Group's OptumCare and DaVita's HCPNV in MCPO services sold to MAOs in the Las Vegas Area. The elimination of this competition would allow UnitedHealth Group to exercise market power unilaterally following the consummation of the Proposed Acquisition. The ultimate effect of the Proposed Acquisition would be to increase the likelihood that prices of MCPO services provided to MAOs in the Las Vegas Area would rise above competitive levels. The Proposed Acquisition would also result in a decrease in incentive to compete on quality, services, and other amenities in the Las Vegas Area.

### B. *Vertical Effects in the Las Vegas Area*

20. The Proposed Acquisition would also result in vertical anticompetitive effects stemming from the integration of UnitedHealth Group and HCPNV, because UnitedHealth Group—which owns United, the leading MAO in the Las Vegas Area—would control a competitively significant input—HCPNV—for United's rival MAOs' networks. This would give UnitedHealth Group the ability and incentive to

negotiate with United's rival MAOs for higher HCPNV rates, or even refuse to allow rival MAOs to contract with HCPNV.

21. The ultimate effect of the Proposed Acquisition would be to increase the likelihood that the Centers for Medicare and Medicaid Services ("CMS") will make higher payments to MAOs, and seniors in the Las Vegas Area would incur higher cost-sharing payments and receive fewer benefits and lower quality healthcare services.

22. The Proposed Acquisition would also reduce the non-price competition that takes place today between United and Humana, an MAO in the Las Vegas Area. Today, Humana and HCPNV closely coordinate on care, quality, and service offerings. The Proposed Acquisition may significantly reduce HCPNV's incentive to work with Humana to compete against United on these non-price dimensions. In turn, a reduction in Humana's MA plan quality and benefits would diminish United's incentives to improve attributes of its own MA plans. Ultimately, this would reduce the quality and breadth of choices available to seniors in the Las Vegas Area.

### VII. ENTRY CONDITIONS

23. New entry or expansion by existing market participants is unlikely to occur in a timely or sufficient manner to deter or counteract the likely anticompetitive effects of the Proposed Acquisition in the Las Vegas Area.

### VIII. EFFICIENCIES

24. Defendants' claimed efficiencies do not outweigh the Proposed Acquisition's likely harm to competition. The purported benefits fall far short of the cognizable efficiencies needed to outweigh the Proposed Acquisition's likely significant harm to competition in the Las Vegas Area.

### IX. FIRST CAUSE OF ACTION
**Violation of the Clayton Act**

25. The Proposed Acquisition constitutes an unfair method of competition and, if consummated, may substantially lessen competition in the relevant markets described above in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## X.   PRAYER FOR RELIEF

Accordingly, Plaintiff State of Nevada prays for relief as follows:

1. An order for injunctive relief prohibiting Defendants UnitedHealth Group and Collaborative Care Holdings, LLC from acquiring Defendant DaVita Medical Holdings, LLC; and

2. All other relief as this Court may deem just and proper

Dated this 19th day of June, 2019.

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate

*/s/ Lucas J. Tucker*

LUCAS J. TUCKER (Bar No. 010252)
Senior Deputy Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **COMPLAINT** with the Clerk of the Court by using the electronic filing system.

I certify that the following participants in this case are registered electronic filing systems users and will be served electronically:

**AND/OR**

I further certify that service was made on the following counsel of record via electronic mail (as previously stipulated), and by depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada to the following participants:

D. LEE ROBERTS, JR.
WEINBERG, WHEELER, HUDGINS
    GUNN & DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, Nevada 89118
Telephone: 702-938-3838
lroberts@wwhgd.com
Attorneys for Defendants UnitedHealth Group Incorporated and Collaborative Care Holdings, LLC

GREGORY A. BROWER
Brownstein Hyatt Farber Schreck
100 North City Parkway
Las Vegas, Nevada 89106
Telephone: 202-652-2340
gbrower@bhfs.com
Attorneys for Defendants DaVita Inc. and DaVita Medical Holdings, LLC

Dated: 6/19/19

_Dorianne Potra_
An employee of the
Office of the Attorney General